Thank you, Your Honors. Kevin Little on behalf of the appellant, Andy Bernard-Taylor. And I would like to reserve just one or two minutes for rebuttal. If I may do so, I would just watch the clock. I hope it's visible from where you are. There it is. Okay. Yes, it is. Thank you. Both of the issues raised in this appeal are... by controlling Supreme Court precedent, indicating that Mr. Taylor is entitled to habeas relief. With respect to the issue regarding the impropriety in and of itself of the giving of Calgic No. 2.21.2, absent any corrective or explanatory instruction being given in the specific instance of a defendant's testimony being part of the case. You probably have to meet the burden, do you not, of showing what the impact was or should have been on the jury? What's the harm here? Your Honor, this, since it is a burden-shifting instruction, as opposed to a merely ambiguous instruction, if you take the instructions, all of them as a whole, since this is a burden-shifting instruction that is not corrected by any other particular instruction that was given, this is a structural error. This is a Sullivan error. In essence, Mr. Taylor was required as part of his defense to prove to the jury that his testimony was probably true. In that respect, it's no... Where does it shift the burden to him in the instruction? I'm sorry? Where does it shift the burden to him in the instruction? The instruction in and of itself does not affirmatively state that the defendant has a burden of proof, but... The jury was not instructed that notwithstanding this instruction, as it might apply to witnesses in general, that where you're talking about not merely a defendant's testimony, but any witness who testifies on behalf of a defendant, you cannot exclude that evidence merely because as a matter of probability, you don't find it to be credible. But that's different from burden-shifting. I just don't – the word burden is not used. I understand your argument that it may be – might allow conviction by a standard proof lower than beyond a reasonable doubt. That's a separate issue. But I don't see much support for your – in the text of the instruction for your contention that it actually shifted the burden of proof. Well, Your Honor, it's very similar – excuse me – to the instruction in Kuhl v. United States, where the jury was instructed that the convincing – that the defendant had to have, with respect to an affirmative defense, had to have presented something with convincing force beyond a reasonable doubt, which the Supreme Court struck down. It also is not dissimilar to the Engle v. Isaac, where an affirmative defense in a criminal case was required to be proved by a preponderance of the evidence. Well, in Kuhl, the jury was instructed that you are convinced it's true beyond a reasonable doubt. And there actually – there's a standard placed in that. Yes. And I understand that there probably was a more explicit instruction to the jury as to burden, but the net effect here is the same. And it's really a difference in degree and not principle. The difference here with respect to the instruction is the net effect was that the jury was entitled to place a burden on the defendant. And it was a burden of proving, more probably than not, that his testimony was well-founded or credible before it would be considered as part of the total evidence that was germane to the question of guilt or innocence. Assuming for the moment that it is not structural error, then would you answer Judge O'Scalin's question about how this had an injurious and substantial effect on the jury's verdict in your view? Assuming that this is not a structural error, the testimony of the defendant, this essentially was a case in which it was the two officers' word against the defendant's word. And for us to be able at this point to say that it was harmless would require a reasonable amount of evidence. Essentially, this court to place itself in the role of the fact finder. Now, of course, one might be able to cynically surmise that, well, this is a defendant with a lengthy history who is telling what the jurors likely deem to be a convenient story. But the annals of criminal trials show that, unfortunately, this is not the case. And testimony like this could, if it wasn't impaired by an inaccurate and unfair instruction, could serve to have convincing force as to at least one juror. What is there about this trial that makes this instruction dangerous to your client? What makes it dangerous, Your Honor, is that the jury is not in connection with this instruction. The jury is not in connection with this instruction.  And I'm told that notwithstanding, any evidence submitted on behalf of or by the defendant needs to be considered as part of the total evidence in determining whether guilt has been established beyond a reasonable doubt. There's no curative instruction that's given. Well, we haven't. I can't think of a case where we've held that a garden variety instruction that may be problematic in some context is a Federal constitutional violation. It's a kind of fine-tuning and nitpicking that, so far, we haven't engaged in on Federal. There has to be a showing that there's a due process violation, that somehow the trial became unfair because of this State law-permitted instruction. Now, this doesn't do this instruction any good that the California Supreme Court has said grace over it a thousand times and we're stuck with it. That doesn't make it good or bad, but I still haven't heard anything that violates the Federal constitution. It's a fair trial. Your Honor, this instruction undermined the defense case the same way that the instructions found objectionable by this Court in Gibson v. Ortiz and Francis v. Franklin did. And, again, there's a difference in degree but not in principle. The defendant's or the petitioner's right to a fair trial was impaired to the point of being violated by this instruction, which essentially permitted the jury to disregard the only evidence that was submitted on his behalf. Counsel, you're down to a little over a minute. You have another point. Yes. Well, yes. Actually, I have a very big point. The second aspect of this appeal is that Mr. Taylor is, according to the research that we've done, the only person serving a presumptive life sentence for possessing one one-thousandth of an ounce of cocaine. Mere possession. There's no other state in which he could have received such a sentence. There is no state where his sentence would essentially be a presumptive life sentence. Okay. We have Ewing. We have Andrade. You'll have to distinguish one or the other to make that argument. Well, Your Honor, Andrade has not and does not stand for the proposition that any recidivist scheme, regardless of the nature of the triggering offense, is sufficient to support a life sentence. There still is, and there's language in Solemn and in Wit and also in Andrade that indicates that the focal point still is the triggering offense. And here the triggering offense is so minuscule that, notwithstanding Mr. Taylor's criminal history, there simply is no Eighth Amendment basis for finding that in and of itself supports a life sentence. Is this a third strike? Yes, it is, Your Honor. Thank you, counsel. Your time has expired. We will now hear from the government. May it please the Court, Justin Riley, on behalf of the warden. Respondent is aware of this Court's rule regarding a party which hasn't filed a merits brief, and so I'm here to answer questions and develop the record as this Court finds necessary. I'll remind the Court. I'm getting quizzical looks, I think, that we filed the letter. Can you speak a little louder? That's part of our question. I'm sorry. I'm aware of this Court's rule that limits the ability of a party to argue if that party hasn't filed a merits brief. The State has not filed a brief, but you're entitled to argue. Oh, okay. Thank you. I would just like to separate the two arguments, as counsel did. The instructional issue is a classic Estelle v. McGuire scenario. The last time I think this Court, this particular Court, struck down an instructional error on a windship-type argument was Gibson v. Ortiz. And in that case, this Court was very clear in finding that the instruction told the jury that they could find evidence true by a preponderance and then take that evidence and find that the defendant had actually committed the crime. Here we have, at best, a vague instruction that talks to how the trier of fact, and the jury in this case was told that they were the triers of fact, how they will determine which facts are true. And any ambiguity in that instruction, and I'm quoting from page 16 of the appellant's opening brief, where Calgic number 2.90 was given in this case, it's in a footnote, this presumption places upon the people the burden of proving him guilty beyond a reasonable doubt. They were very clear about the standard of proof here. Later on in the instruction, the Court instructed the jury that after an entire comparison and consideration of all the evidence, the jury must be left with an abiding conviction of the truth of the charge. In this case, a very vague instruction on finding the truthfulness of facts of all the witnesses cannot overcome the very specific language with which the jury was instructed. Any response to the second issue? Yes. Quoting specifically from this Court's opinion in Ramirez v. Castro, and in response to Appelli's focus on the fact that this is a possession offense, it was a very small amount of drugs, this Court in Ramirez v. Castro at I believe page 768 says that a petitioner sentenced under a recidivist, as a recidivist, under the three strikes law, a reviewing court must weigh the gravity of his offense. Quote, in our proportionality analysis, we must place on the scales not only his current felony, but also his criminal history. Now, the Appelli in this case was in possession of paraphernalia and a usable amount of controlled substance. But in his past, and I'm quoting from page 72 and 73 of the excerpts of record, he has a very, very lengthy criminal history. And the strikes, which brought about this 25-year life sentence, are at line 5 on page 73. He stabbed and killed a victim during a fight. And at line 18 on page 73, with a co-defendant, entered a business with a gun, threatened a clerk,  Now, in addition to the lengthy criminal history, he is also violent and uses weapons. And I believe this isn't even his only drug-related offense. I believe he was convicted twice for possession of paraphernalia. So in taking into account not only his current felony, but his criminal history, the State courts were very reasonable in upholding this 25-to-life sentence. Kennedy, I guess the appellant made a – tried to make a point, in a way, of proportionality of the penalty and the offense in this case. Of course, with the Third Strike system, it has in it potential for all kinds of wild-card sentencing, some of which is problematic in any kind of civilized society. One wonders why a person with an equivalent of half an aspirin of powder in his hat band is the beneficiary of a life sentence. I mean, it just would make a wonderful sitcom. But you wish somebody like Mel Brooks would do the movie on it. I'd watch that. But what is the explanation? Why is this a fit and proper sentence? Taking into account, it's a recidivist – I'm having so much trouble with that word today statute. We have to take into account his criminal history. But the criminal history is wagging – it's a tail wagging the dog here, because he obviously was not in prison for life based on his criminal history prior to this offense. The triggering point was the possession, right? That's right. But as Solemn and Harmelin and Rummel have distilled for us and explained in Locke here, we have to look at the criminal history. I think defense counsel is quite correct that the primary focus has to be the triggering offense, although one can take into consideration criminal history. And here you have – you're dangerously close to putting somebody in jail for life for being a drug addict, right? I wouldn't go that far. I believe Locke here – You said his history shows prior drug offenses. That's true. He says he's an addict. That's true. I believe that brings up two issues. The first is I believe Locke here versus Andrade in a 50-to-life sentence recognizes that the prisoner still had a possibility of parole in a 50-year-to-life sentence. And here we have a 25-to-life sentence, and he has the possibility of parole after 25 years. The second thing was that it was just a drug offense, if I can paraphrase the arguments that I think I'm hearing. The California Court of Appeal, in citing Rummel, I believe, mentioned that – flipping to it here, I don't want to misquote. I'm sorry. Harmelin v. Michigan quotes Justice Kennedy and says, And this particular appellant is no stranger to both violence and theft and assault      And it's just not unreasonable for a court to find that this appellant is not being rehabilitated through a lengthy rap sheet. Does the State have an explanation of its failure to file a brief? Yes. We looked at the findings and recommendations in this case and decided that they adequately addressed the issues that that appellant had raised in this case. Did you make that determination yourself or did a supervisor? I don't want to blame anybody else, but it was definitely a joint decision. It would be helpful if you filed a note to that effect rather than leave us hanging and waiting for a brief that doesn't appear for scheduling purposes and others. I believe we did file a letter. Okay. I actually called the court. Could be. I'll check. Thank you. The case just argued will be submitted for decision. And we will hear argument in Toledo v. Lamarck.
judges: Goodwin, O'scannlain, Thomas